IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| PLANNED PARENTHOOD OF IDAHO, INC., and GLENN H. WEYHRICH, M.D., | ) ) ) | Case No. CV-05-148-S-BLW |
| | ) | **MEMORANDUM DECISION** |
| Plaintiffs, | ) | **AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| LAWRENCE G. WASDEN, Attorney General of the State of of Idaho, and GREG BOWER, Ada County Prosecuting Attorney, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**INTRODUCTION**

The Court has before it Planned Parenthood's motion for preliminary

injunction, and the State's motion to dismiss and motion to stay.  On June 15, 2005,

the Court heard oral argument and took the motions under advisement.  For the

reasons expressed below, the Court will grant the motion for injunction, deny the

State's motions, and enjoin the enforcement of House Bill 351.

## FACTUAL BACKGROUND

**1.**   **Prior Litigation**

In 2000, the Idaho Legislature passed legislation requiring that before performing an abortion on a minor, a physician obtain the consent of the minor's parents.  This requirement could be waived in cases of medical emergency, but the physician performing the abortion was required to notify the parents after it was performed.  Physicians who violated these requirements were subject to civil and criminal sanctions.

Planned Parenthood brought a challenge to the legislation, and Magistrate Judge Mikel H. Williams enjoined limited portions of it.  The Legislature responded by passing amended legislation, that was again challenged by Planned Parenthood.

Judge Williams rejected some of those challenges, but found others persuasive.  *Planned Parenthood v. Lance*, Civil No. 00-353-S-MHW (December 20, 2001).  Refusing to strike down the entire law on the basis of a few violations, he found the offending provisions severable, and issued a line-item injunction applying only to the flawed provisions.

That injunction permanently enjoined certain venue and appeal-time provisions.  More pertinent to this litigation, it also enjoined provisions that governed how minors could bypass (1) the pre-abortion consent requirement, and

(2) the post-abortion parental notice requirement in medical emergency cases.

The flaw in the pre-abortion consent-bypass process, according to Judge William's decision, was that a judge hearing a minor's request for bypass would be compelled to report the case to law enforcement, because the legislation requires the judge to report all crimes, and it is a crime to have sex with a minor female. These crimes, cited by Judge Williams in his decision, include the statutory rape provisions of I.C. § 18-6101, and the fornication provisions of I.C. § 18-6603. Thus, a minor seeking a bypass would be compelled to expose her sexual partner to criminal sanctions. While this rightly applies to a partner who is a sexual predator, it would also apply to a close-in-age boyfriend. The broad sweep of the reporting requirement would chill any minor's desire to seek a bypass, and therefore constitutes an unconstitutional burden on her right to choose an abortion.

Judge Williams found a similar undue burden in the process for bypassing the post-abortion notice requirement in medical emergency cases. This notice requirement could be bypassed if the physician believed that notice would jeopardize the minor's physical safety because the minor would suffer neglect or abuse. However, in that case, the physician had to file a report with law enforcement that would eventually be served on the minor's parents, even those parents whose neglect or abuse had led the minor to seek the bypass. Once again,

the bypass process – supposedly confidential – actually served to broadcast the matter to an even wider audience, thereby constituting an undue burden.

Judge Williams also found that this bypass process was too limited.  He noted that it was only available to those who might suffer neglect or abuse such that their physical safety might be jeopardized.  He held that many others who might have legitimate reasons other than a fear for physical safety would be precluded from seeking a bypass.  He cited to *Bellotti v. Baird*, 443 U.S. 622 (1979) ("*Bellotti II*"), which held that minors must be allowed to prove that either their maturity or their best interests warranted a bypass of pre-abortion consent requirements, and he applied that standard to the post-abortion notice process.

Finally, resolving three further arguments pressed by Planned Parenthood, Judge Williams rejected each of them, finding as follows:  (1) The definition of medical emergency was not unconstitutionally vague;  (2) The scienter requirements for criminal prosecution of physicians were not unconstitutionally vague; and (3) The flaws discussed earlier were severable, and thus the entire Act did not need to be struck down.

On these last three rulings, the Ninth Circuit reversed Judge Williams. *Planned Parenthood v. Wasden*, 376 F.3d 908 (9th Cir. 2004), *cert. denied*, 125 S. Ct. 1694 (2005).  The Circuit did not reach any of his other rulings.

Memorandum Decision & Order -- page 4

With regard to the definition of medical emergency, the Circuit found that the Act excluded some woman with significant health risks from its definition of medical emergency, rendering it unconstitutional.  *Id.* at 930.  The Circuit relied on *Planned Parenthood v. Casey*, 505 U.S. 833 (1992) for the rule that an abortion regulation cannot "foreclose[] the possibility of an *immediate* abortion despite some significant health risks . . . ."  *Id.* at 923 (emphasis in original).

The Circuit also found that the legislation's scienter requirement for imposing criminal sanctions on physicians for performing abortions in medical emergencies without parental consent were unconstitutionally vague.  *Id*. at 933-35.  In a medical emergency, the physician could perform an abortion without parental consent only when there was insufficient time for the physician to obtain either a consent or court approval of a bypass.  But because there was no firm timetable governing the bypass process, the physician had no way of knowing how long that process might take to complete.  This might not present a problem if the physician was to be judged on a subjective good-faith standard, but the Act used an objective reasonableness standard instead, which rendered it unconstitutionally vague.  *Id*.

Having identified the flaws in the medical emergency provisions, the Circuit turned to the issue whether those provisions could be severed, leaving the rest of the Act intact.  The Circuit observed that when the offending provisions were removed,

so many more minors would be able to use the consent-bypass process that it would destroy the intent of the Legislature. *Id.* at 937. Thus, the offending provisions were not severable, despite a detailed severability provision in the Act, because the resulting statute would not accord with legislative intent. *Id.* Of course, doing away entirely with the medical emergency exception would effectuate the legislative intent to require consents as often as possible, but the Circuit held that such an exception was constitutionally mandated and hence could not be removed. *Id.*

## 2.   <u>House Bill 351</u>

In response to *Wasden*, the Idaho Legislature passed amended legislation contained in House Bill 351 ("the Act"). The Court will summarize the main parts of the Act and then discuss the amendments that were designed to address *Wasden* and Judge Williams' decision.

The Act requires that a physician, before performing an abortion on a minor, obtain the consent of the minor's parents. I. C. § 18-609A(1)(A)(I). This consent requirement can be waived if (1) the minor is emancipated, (2) the minor is mature enough to make her own decision, or (3) the abortion would be in the best interests of the minor. I.C. § 18-609(A)(1)(a)(ii)-(iv). The Act also waives parental consent before an abortion when there is a medical emergency; however, the physician must immediately notify a parent after the abortion. I.C. § 18-609A(1)(a)(v).

Memorandum Decision & Order -- page 6

To satisfy this post-abortion notification requirement, a physician must do two things.  First, she must use "due diligence" in attempting to notify the parents "immediately" after the abortion, and, if unsuccessful, to continue her attempt for "an eight (8) hour period."  *Id.*  Second, she must provide to the parents a verbal or written notice containing a statement (1) explaining that an abortion was performed, (2) describing the factual circumstances supporting the physician's judgment that a medical emergency existed, (3) explaining "the grounds for the determination that there was insufficient time to obtain the informed consent of a parent or a court order," and (4) providing "any additional information needed for the minor's proper care."  *Id.*

A physician who violates these provisions is subject to professional discipline, civil penalties, and damages.  I.C.§§ 18-605; 18-609A(3).  Moreover, a physician who knowingly violates any of these provisions has committed a felony, and is subject to criminal penalties of $5,000 and imprisonment from two to five years.[1]

The Act's Statement of Purpose notes that "[t]his bill addresses the concerns expressed by the Ninth Circuit Court of Appeals and the U.S. District Court for the

---

[1]  The State has agreed to delay implementing the Act until July 1, 2005.  That moots the arguments over its effective date, and the Court will therefore not consider them.

Memorandum Decision & Order -- page 7

District of Idaho." One of the main amendments designed to address those decisions was a clarification of the definition of "medical emergency" to include cases where any delay "will cause serious risk of substantial and irreversible impairment of a major bodily function."

The Act also provides for an attorney to represent the minor during a judicial bypass, and for a *guardian ad litem* to represent the best interests of the minor. The provisions requiring the court to notify law enforcement regarding evidence of a crime were stricken, and the reporting burden was placed on the *guardian ad litem*. Addressing Judge Williams' concerns that every bypass would trigger a report of statutory rape and fornication, the Act excludes the crime of statutory rape set forth in I.C. § 18-6101 from the requirement that the *guardian ad litem* report every crime, but does not expressly exclude the crime of fornication set forth in I.C. § 18-6603.

With regard to the post-abortion notice requirements, the Act broadened the exemptions by allowing physicians to forgo notice (1) if it would jeopardize the "safety" of the minor (unlike the prior more limited exemption requiring a risk to "physical safety"), and (2) where the "best interests" of the child required that notice be withheld. In these circumstances, the physician was required, in lieu of providing notice, to file a petition "pursuant to" the Child Protective Act [CPA].

Upon adjudication that the minor came within the purview of the CPA, or upon a judicial finding that the best interests of the minor required withholding notice, a court could order that the physician's duty to provide parental notice was relieved.

The Act also struck some, but not all, of the reporting requirements imposed on physicians who believed that a minor suffered from neglect or abuse. The prior legislation required physicians with that knowledge to (1) file a report to law enforcement under I.C. § 16-1619; (2) file a petition pursuant to I.C. § 16-1605 (the CPA); and (3) include in the CPA petition a reference that an abortion had been performed under the legislation. The new Act struck the first and third reporting requirements, leaving the second intact.

## ANALYSIS

Planned Parenthood brought this suit to challenge the Act. They have filed a motion to enjoin its enforcement, claiming that the Act contains many of the same flaws identified by Judge Williams and the Ninth Circuit.

## 1.     <u>Standard of Review</u>

To obtain a preliminary injunction, Planned Parenthood must show that it is likely to succeed on the merits and may suffer irreparable injury, or that serious questions exist on the merits and the balance of hardships tips in its favor. *See*

*Self-Realization Fellowship Church v. Ananda*, 59 F.3d 902, 913 (9th Cir. 1995). The two tests are not separate but represent a sliding scale in which the required probability of success on the merits decreases as the degree of harm increases. *Id.* "Under any formulation of the test, the plaintiff must demonstrate that there exists a significant threat of irreparable injury." *Oakland Tribune, Inc. v. Chronicle Publishing Co.,* 762 F.2d 1374, 1376 (9th Cir.1985).

To prevail on the merits, Planned Parenthood must meet the standard set in *Planned Parenthood v. Casey*, 505 U.S. 833, 895 (1992): A state statute regulating abortion is facially unconstitutional if in a "large fraction of cases in which the [statute] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion."

Combining the injunction standard with the standard for prevailing on the merits, Planned Parenthood must show that it is likely to prevail on its claim that in a large fraction of cases in which the Act is relevant, it will operate as a substantial obstacle to a minor's choice to undergo an abortion.

## 2.    <u>Consent-Bypass Process</u>

To determine if Planned Parenthood has met its burden, the Court will turn first to the Act's consent-bypass process. One flaw of the prior process, identified by Judge Williams, was that in every consent-bypass proceeding, the court would be

required to report the crimes of statutory rape and fornication.  To address that ruling, the Act made two changes: (1) the reporting requirement was shifted from the court to the *guardian ad litem*, and (2) the crime of statutory rape was specifically exempted from the reporting requirements.

Planned Parenthood argues that these changes do not eliminate Judge Williams' concerns because the crime of fornication will still need to be reported in every case.  While exempting statutory rape, the Act continues to require the reporting of all other crimes under Title 18 of the Idaho Code, which includes the crime of fornication set forth at I.C. § 18-6603.

The State responded in its briefing that the Act intended to exempt fornication from the reporting requirement because fornication was a "lesser-included crime [to statutory rape] that will not have to be reported."  *See State's Reply Brief* at p. 4. The State did not cite any authority for this proposition.

At oral argument, the State retracted this argument, and argued instead that fornication is the same crime as statutory rape and hence both are exempted from reporting requirements.  The State's counsel conceded at oral argument that he had no legal authority for that proposition.

The language of the Act does not support the State's interpretation.  The Act very specifically exempts statutory rape from the reporting requirements by naming

its statutory code section.  *See* I.C. § 18-6101.  However, the crime of fornication, set forth in a separate code section, *see* I.C. § 18-6603, was not included in that express exemption.  Given that Judge Williams had previously identified the need for such an exemption, its absence is a clear message that fornication is to be reported.

The State responds that the Act shifted the reporting duty to the *guardian ad litem*, and claims that the minor is not required to tell the *guardian ad litem* everything.  However, the *guardian* is appointed to "seek the best interests of the minor," and to "investigate the circumstances of the minor."  I.C. § 18-609A(1)(b).  It is hard to imagine how a *guardian ad litem* could comply with that duty without investigating how the minor became pregnant, and learning who her partner was, which would trigger the reporting duty.

The State argues with some force that the reporting requirement is necessary to hold accountable criminals guilty of impregnating minors through forcible rape, incest, or other types of sexual predation.  The Legislative Finding and Intent section of the Act states that the reporting requirement is intended "to cover *at least* three circumstances: incest, forcible rape and sexual predators.  In each of those circumstances a male would have great motivation to obtain an abortion for a minor to make the problem pregnancy go away and cover up his crime." (emphasis added).

Stripping these reporting requirements from the Act, the State argues, "afford[s] protection to rapists and perpetrators of incest [and] . . . can only serve the interests of the criminal, not the child."  *O'Manning v. Hunt*, 119 F.3d 254, 273-74 (4th Cir. 1997).

If the reporting requirement was limited to such criminal conduct as forcible rape, incest, and other forms of sexual predation, the State would have a strong case.  But as the Legislature itself recognized by using the qualifier "*at least,*" the reporting requirements extend further.  For example, the crime of fornication includes consensual sex with a boyfriend.  *See* I.C. § 18-6603.  As Judge Williams found, "[i]n almost all cases where a pregnant minor seeks a judicial bypass, she has engaged in consensual sex."  *See Memorandum Decision* at p. 26.  Thus, "almost all" of the cases do not involve forcible rape, incest, or sexual predation, and yet must be reported.

The overreaching of the reporting requirements is no trifle.  *Casey* requires that the bypass process be "adequate" and *Bellotti II* defines an adequate process as one that "will be completed with anonymity."  *Bellotti II*, 443 U.S. at 643-44. Judge Williams detailed the loss of anonymity that the minor suffers when her fornication is reported under the Act, as well as the chilling effect the reporting has on the minor's decision whether to even seek an abortion in the first place.  The Court will

not repeat that discussion, but will simply note that it is accurate and persuasive and is adopted wholesale by this Court.

Under the Act, a minor with abusive parents who had consensual sex with her close-in-age boyfriend is forced to make an awful choice in order to obtain an abortion. Either she must obtain the consent of her abusive parents, or she must go through the consent bypass process, which will almost certainly identify her boyfriend, exposing him to criminal sanctions.

A Hobson's choice, of this sort, is no choice at all. A bypass process that requires the minor to sell-out her close-in-age boyfriend for a bypass is neither "adequate" nor "completed with anonymity."

Of course, in the real world, a minor faced with two such unacceptable choices will most likely choose neither. Instead, she will drop out of the legal abortion process altogether and, since she is facing a medical emergency, either look for a back-room alternative or proceed with a potentially dangerous pregnancy. Planned Parenthood therefore is likely to prevail on its claims that (1) the reporting requirement in the consent-bypass process continues to constitute an undue burden under *Casey*, and (2) the Act contains a significant threat of harm to the health of certain minors.

**3.    Post-Abortion Notice – Neglectful or Abusive Parents**

Memorandum Decision & Order -- page 14

The Court turns next to the medical emergency provisions of the consent-bypass process.  Under these provisions, a physician may perform an abortion without prior parental consent in medical emergency cases, but must notify the parents afterwards.  While the Act broadens the exemptions to the post-abortion notice requirement, it continues to condition those exemptions on the physician filing "a petition pursuant to section 16-1605, Idaho Code [the CPA]."  This perpetuates the flaw identified by Judge Williams.  A petition filed pursuant to § 16-1605 would be served on the parents under § 16-1606,[2] perhaps the very same parents who are causing the neglect or abuse that led to the filing of the petition.

As Judge Williams recognized, any protection afforded by the neglect/abuse notice exemption promptly disappears when the filing of the petition triggers notice to the parents.  Here, as in *Hodgson v. Minnesota*, 497 U.S. 417 (1990), the purported "exception to notification for minors who are victims of neglect or abuse is, in reality, a means of notifying the parents."  *Id*. at 460 (O'Connor, J., concurring).

The State disagrees with this analysis, pointing out that "[n]othing . . . incorporates Idaho Code § 16-1606 into [the Act]."  *See State Reply Brief* at p. 2.

---

[2]  After a CPA petition is filed, "each parent or guardian shall . . . be notified . . . ."  I.C. § 16-1606(a).

The State reads the Act to create a judicial process that is preliminary to the CPA process.  Under the State's reading, a physician who feels a minor will suffer neglect or abuse such that her safety would be jeopardized if the parents were notified, is directed by the Act to (1) draft a petition that contains the information required by the CPA and (2) file the petition with a court rather than with a prosecutor pursuant to the CPA.  Under the State's interpretation, the filing of this petition does not immediately trigger the CPA but instead begins a preliminary process outside the CPA whereby a judge will review the petition and determine both whether the physician should be exempted from the notice requirement and whether the CPA process should even be initiated.

The problem with the State's interpretation is that it is nowhere to be found in the language of the Act.  Judge Williams' decision clearly pointed out that by requiring the filing of a petition "pursuant to" the CPA, the prior legislation triggered the CPA, including its requirement that the petition be served on the parents.  The Act retained the "pursuant to" language indicating no intent to address Judge Williams' concerns.  The Act's Legislative Finding and Intent section, containing explanations of changes made to accommodate *Wasden* and Judge Williams' decision, says nothing about Judge Williams' concern that the CPA petition will be served on the parents.  Indeed, the only change made by the Act in

this regard was to delete the prior requirement that the CPA petition mention that its filing was prompted by an abortion under a provision of the Act.  That change assumes that the petition will continue to be served on parents – it makes no sense otherwise.

Moreover, that change does little to address Judge Williams' concerns.  Even if the petition does not mention that an abortion was performed, the petition triggers an investigation and hearing, and it is simply inconceivable that during this process, the parents would not learn that an abortion was performed on their daughter.

**4.**     **Post-Abortion Notice – Mature Minors**

The post-abortion notice requirements also fail to include any exemption for mature minors.  Certainly the State has a substantial interest in providing notice to parents of immature minors after an abortion to assist those minors in their post-abortion medical care.  However, when the minor is mature enough to make her own decisions independent of her parents, the State has no more interest in notifying her parents than it would in notifying the parents of an adult woman – namely, none. *Planned Parenthood v. Miller*, 63 F.3d 1452, 1460, (8th Cir. 1995) (holding that for mature minors, "the State has no legitimate reason for imposing a restriction on their liberty interests that it could not impose on adult women").  The Act appropriately

permits the mature minor to make the abortion decision itself without parental

consent or notice.  But, inexplicably, it assumes that the same mature minor requires

parental input after the abortion.

A failure to provide mature minors with an exemption from post-abortion

notice means that for a large fraction of mature minors suffering a medical

emergency, the lack of a post-abortion notice bypass would operate as a substantial

obstacle to their choice to undergo an abortion.  The State disagrees, arguing that a

requirement of post-abortion notice poses no obstacle to the right to chose an

abortion because "the physician will already have performed the abortion."  *See*

*State's Reply Brief* at p. 9.  However, that argument ignores reality.  A mature

minor, in the midst of a medical emergency, must decide whether to go forward with

an abortion, knowing that afterwards, her parents will be notified that she (1)

engaged in sex, (2) became pregnant, and (3) had an abortion.  Viewed realistically,

the post-abortion notice provisions have a substantial pre-abortion chilling effect for

mature minors.

Indeed, this chilling effect could be substantial enough to cause the mature

minor to forego the emergency procedure even if it threatened her life.  That is a

fatal flaw under *Wasden*:  "[U]nder *Casey's* undue burden framework, once [a

medical emergency] exists, the constitutional inevitability of an abortion defeats the state's interests in potential life, making it extremely likely that any regulation *that affects the procedure*, even if the procedure can eventually go forward, is unduly burdensome in light of the state's limited interests."  *Wasden*, 376 F.3d at 923 (emphasis added).  The failure of the parental notice provision to include a mature minor exception certainly "affects the procedure" by infringing on the ability of a mature minor to protect her health.

For these reasons, Planned Parenthood is likely to prevail on its claim that the lack of a notice-bypass process for mature minors in the midst of a medical emergency is an unconstitutional burden under *Casey*.[3]


### 5.   Duties of Physicians

Under the Act, when a physician performs an abortion on a minor in a medical emergency without prior parental consent, the physician shall, "[i]mmediately after [the] abortion . . . with due diligence, attempt to provide a parent . . . actual notification of the medical emergency."  I.C. § 18-609A(1)(a)(v).

---

[3]  For these reasons, the Court disagrees with two decisions from other jurisdictions cited by the State.  *See Planned Parenthood v. Camblos*, 155 F.3d 352 (4th Cir. 1998), and *Port Washington Teachers' Assoc. v. Board of Education*, 361 F.Supp.2d 69 (E.D.N.Y. 2005).

A physician who fails to comply with these duties is subject to criminal sanctions. I.C. § 18-605(3).

Planned Parenthood claims that the duties imposed on physicians are too vague to pass constitutional muster.  A law is unconstitutionally vague if it fails to provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement.  *Tucson Woman's Clinic v. Eden*, 379 F.3d 531 (9th Cir. 2004).  If a statute subjects transgressors to criminal penalties, as this one does, vagueness review is "even more exacting."  *Id.* at 554.   "Given the potential for harassment of abortion providers, it is particularly important that enforcement of any unconstitutionally vague provisions of the scheme be enjoined."  *Id*.

In *Tucson Woman's Clinic*, physicians who performed abortions were subject to criminal sanctions for violating regulations governing their clinics.  *Id*. at 538. One of the regulations required physicians to "ensure that a patient is . . . treated with consideration, respect, and full recognition for the patient's dignity and individuality."  *Id*.  The Circuit found these terms unconstitutionally vague because their meanings were "widely variable, and they are not medical terms of art," and because the terms were "too vague to limit arbitrary enforcement."  *Id*. at 555.

The same analysis applies here.  The phrase "due diligence" is not defined by the Act.  Is it an objective or a subjective standard?  Is a physician acting with due diligence if she attempts to notify the parents by e-mail?  What if she calls once every hour?  What if she leaves a message on an answering machine?  What if she delegates the task to a nurse or administrator?

These questions are not answered by the Act.  The term "due diligence" has scores of meanings, the most developed of which come not from medicine but from the law of securities regulation and corporate transactions.  Those meanings would have little carry-over value here.  When a term is subject to such widely variable meanings, it presents a potential for arbitrary enforcement, as recognized by *Tuscon Woman's Clinic*.  As in that case, judicial review must be "even more exacting" because the legislation imposes criminal sanctions.  *Id*. at 554.  The Act cannot pass that "exacting" review.  For these reasons, the Court finds that Planned Parenthood is likely to prevail on its claim that the duties imposed on physicians for post-abortion notice in medical emergency cases are unconstitutionally vague.

**6.**   **Motion to Dismiss or Stay**

The defendants ask this Court to abstain from deciding this case until the Idaho courts have been given a chance to interpret the Act, citing *Railroad Comm'n*

*of Texas v. Pullman, Co.,* 312 U.S. 496 (1941).  The Circuit rejected this argument in *Wasden* on the ground that "the plain meaning of the statute is unconstitutional, and . . . any constitutional construction is not readily apparent."  *Wasden*, 376 F.3d at 932.  At the same time, and for the same basic reason, the Circuit decided not to certify the issues to the Idaho Supreme Court.  *Id*. at 931,

n. 22.

This analysis continues to apply, as shown by the discussion above.  Planned Parenthood is likely to prevail on its claim that the plain meaning of the Act is unconstitutional.  The State's interpretations are not likely to be adopted by the Idaho courts.  For these reasons, the Court will deny the motion to dismiss or to stay.

### 7.   <u>Severability</u>

The State urges the Court to sever those provisions that are flawed and uphold the remainder of the Act.  The Act contains a provision entitled "Severability" stating that if any provision is declared invalid, "such declaration shall not affect the validity of the remaining portions of this act."  I.C. § 18-615.

In *Wasden*, the Circuit rejected a similar argument, despite a similar

severability provision.  The Circuit found that "[t]he language that would need to be stricken from [the consent and notice requirement provisions] . . . is indispensable to the legislature's effort to ensure that parental or judicial consent would be secured prior to an abortion whenever it would be possible to do so."  *Wasden*, 376 F.3d at 937.  Because deleting the offending provisions would destroy the intent of the Legislature, the Circuit concluded that entire statute must be declared invalid.  *Id.*

In this decision, the Court has found that Planned Parenthood is likely to prevail on its claims asking the Court  to (1) strike down the criminal sanctions against physicians, (2) declare the consent bypass process insufficient because it failed to protect the anonymity of minors under some circumstances as required by *Bellotti II*, and (3) declare the post-abortion notice provisions insufficient because they could lead to notice being provided to neglectful or abusive parents, and because there was no bypass process for mature minors.

To correct these deficiencies, the Court would have to strike certain provisions and rewrite others.  However, this Court cannot "rewrite the statute to save it."  *Wasden* 376 F.3d at 925.  While the Court could strike the offending provisions, the resulting statute would not accord with Legislative intent.  The provisions that must be struck were largely left in place by the Idaho Legislature

even after their constitutional flaws were identified, leaving this Court to conclude, as did *Wasden*, that the "language that would need to be stricken is integral to [the Act]." *Id*. at 937.

For these reasons, the Court concludes that Planned Parenthood is likely to succeed on the merits.  Planned Parenthood has also shown irreparable harm.  The situations described above demonstrate that provisions of the Act, in combination with certain circumstances, will likely threaten the health of minors seeking abortions.  The Court will therefore grant the motion for preliminary injunction, and deny the State's motion to dismiss and motion to stay.

## 8.   <u>Summary</u>

Idaho has a legitimate interest in regulating abortions on minors.  The Act, House Bill 351, furthers that interest by providing notice to parents after medical emergency abortions so that minors can obtain top quality medical care.  It also furthers that interest by requiring that the crimes of sexual predators on minors be reported.

It does not further that interest, however, by imposing criminal sanctions on physicians for the violation of duties that are difficult to understand and subject to arbitrary enforcement.  Neither does it further that interest by providing post-

abortion notice to parents who are guilty of abusing their daughter.  Finally, it does not further that interest by forcing a minor to either obtain the consent of neglectful or abusive parents or go through a consent bypass process that will surely identify her close-in-age boyfriend who impregnated her during consensual sex, exposing him to a criminal charge of fornication.  To be put to such a choice, the Supreme Court has held, places an undue burden on the minor's right to choose an abortion. For these reasons, the Court will enjoin enforcement of the Act.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that Planned Parenthood's motion to amend/correct preliminary injunctive relief (Docket No. 14) is GRANTED, and the defendants are hereby enjoined from enforcing any of the provisions of House Bill 351.

IT IS FURTHER ORDERED, that the preliminary injunction shall last until the Court can resolve any motion for permanent injunction.  The parties are directed to contact the Court's Clerk, LaDonna Garcia (208) 334-9021 for the purpose of setting a Case Management Conference where the further progress of this case can be discussed and various dates and deadlines can be set.

IT IS FURTHER ORDERED, that the motion to dismiss (Docket No. 17) and the motion to stay (Docket No. 18) are DENIED.

IT IS FURTHER ORDERED, that the motion for expedited review (Docket No. 2) is DEEMED MOOT.



DATED:  **June 30, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court